IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BERT B. LAVINE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 05-501-JLF |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

### REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to United States District Judge James L. Foreman pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Bert B. Lavine seeks judicial review of the final agency decision finding that he is not disabled and denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), pursuant to **42 U.S.C. § 423**.[1]

### Procedural History

Mr. Lavine filed an application for DIB and SSI on February 23, 2003. He alleged that his disability began on September 11, 2001. (Tr. 68-70). He claimed disability due to a combination of conditions, including a brain lesion, chest pain, hepatitis, hypertension and sleep apnea. (Tr. 411).

---

[1]The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Thus, plaintiff's DIB and SSI claims will be considered simultaneously, and most citations are to the DIB regulations out of convenience.

The application was denied initially and on reconsideration. (Tr. 40, 46). At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) George Mills on August 16, 2004. (Tr. 424-475). ALJ Mills denied the application for benefits in a decision dated November 9, 2004. (Tr. 18-26). Plaintiff's request for review was denied by the Appeals Council, and the November 9, 2004, decision became the final agency decision. (Tr. 6).

Plaintiff has exhausted his administrative remedies and has filed a timely Complaint in this Court.

### Issues Raised by Plaintiff

Plaintiff raises only one issue. He argues that the ALJ erred in concluding that his condition of pseudo-seizures did not equal the listing for non-convulsive epilepsy, Listing §11.03.

### The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record. The review of the record will focus on the narrow issue raised by Mr. Lavine.

**1.      Plaintiff's Testimony**

Plaintiff was represented at the hearing by attorney Paul Davis. (Tr. 426).

Bert V. Lavine, Jr., as born in 1952 and was 52 years old at the time of the hearing on August 16, 2004. (Tr. 430). He completed high school and a couple of years of community college. (Tr. 433). His drivers license has been revoked due to DUI convictions. (Tr. 431-432).

Plaintiff's past work was as a line worker assembling car brake lights, factory worker in a wrapping paper manufacturing plant, spot welder in bicycle plant. (Tr. 435-437).

Mr. Lavine testified that he usually has 3 or 4 seizures every morning, followed by a "massive headache" and shaking. He again has seizures around dinner time. (Tr. 439). Plaintiff takes Depakote for seizures. He has not been hospitalized for seizures. He once had a seizure which threw him across the room and blackened his eye. The seizures usually last a minute or two. He sometimes falls down with a seizure. He has at least 7 seizures a day. (Tr. 447-448). His seizures are followed by headaches which last 2 or 3 hours. His morning is taken up with trying to recover from the seizures. (Tr. 462).

In addition, he stated that he suffers from chest pain, confusion, and sleep problems. (Tr. 440-441). He no longer drinks, but does smoke half a pack of cigarettes a day. He has some breathing trouble. (Tr. 441-442). He has a pacemaker implanted. (Tr. 444). He takes various medications which relieve his symptoms but cause him to be dizzy and tired. (Tr. 446-447). With medication, he sleeps about 10 hours a night. (Tr. 454).

Plaintiff testified that he can walk 10 feet and then has to sit down. He can stand for only 15 or 20 minutes. He can bend over but cannot stoop or squat. He can "barely" grip with his hands and has diminished feeling in his left hand. He can sit for only 15 to 20 minutes. He can only lift "not very much." (Tr. 449-451). His ability to sit is not limited by pain, but because he gets "antsy." (Tr. 464).

He is able to work in his flower and vegetable gardens, mow the lawn, take care of his cats. He sometime goes to the grocery store with his wife, or goes to Wal-Mart. He tries to help with housework, like sweeping the floor and washing dishes. (455-459). He still like to fish and camp. He fishes at a private lake once or twice a month. (Tr. 460). He volunteers for the Rotary Club, helping with dinners. (Tr. 434).

**2.    Testimony of Vocational Expert**

Thomas D. Upton, Assistant Professor at Southern Illinois University, testified as a vocational expert. Plaintiff stipulated to his qualifications. (Tr. 429). His c.v is at Tr. 53.

Upton testified that plaintiff's previous work was medium, unskilled; heavy, unskilled; medium semiskilled; and heavy, semiskilled. He has no transferrable skills. (Tr. 468-469).

In response to hypothetical questions, Upton testified that plaintiff could do a number of jobs at the light exertional level, such as assembler jobs, hand packer, laundry worker, and production inspector, and that these jobs exist in significant numbers. (Tr. 469-471). He also testified to a number of jobs at the sedentary level which plaintiff could perform. (Tr. 471).

Upton also opined that, if he were to assume that Mr. Lavine's testimony were completely credible, he would be unemployable at any level. (Tr. 472-473).

**3.    Medical Evidence Regarding Seizures**

Plaintiff had an EEG in May, 2002, which was within normal limits. (Tr. 341).

MRI and CT of the brain in April, 2003, were essentially normal with some nonspecific white matter changes. (256, 270, 272).

Mr. Lavine went to the emergency room for a syncopal episode. (Tr. 280).

Plaintiff has been treated by Dr. Syed Shah. The earliest record is dated May 21, 2003. On that date, Dr. Shah noted a history of "blackout spell" with no bowel or bladder incontinence or tongue biting. He had a spell in the office. Dr. Shah described it as a "passing out spell" which lasted from 5 to 15 seconds. His impression was complex partial seizure, or pseudoseizure, or convulsion disorder. He prescribed Dilantin and Trileptal and recommended an EEG study. (Tr. 308).

On June 3, 2003, Lavine reported that his spells were more frequent. Dr. Shah increased the dose of Trileptal and again stated that he intended to schedule him for an EEG to see if the spells were true seizures or pseudoseizures. (Tr. 307).

On June 16, 2003, Dr. Shah filled out a form in which he indicated that plaintiff had 7 or 8 seizures a month and that none were witnessed by a doctor. He indicated that the typical seizure was characterized by alteration of awareness. (Tr. 295-296).

On August 29, 2003, Dr. Shah noted that he urged plaintiff to return to Barnes-Jewish to "make sure they complete his workup and find the etiology of these spells." He further noted that he was questioning his own diagnosis " as to whether these seizures are true seizures or seizure-like activity." (Tr. 305).

Plaintiff was seen at Barnes-Jewish in November, 2003, by Dr. Mitchell Faddis, Assistant Processor of Medicine, Washington University School of Medicine. He noted that a defibrillator had been placed recently, and that Lavine had continued to experience episodes of syncope. He opined that the syncopal episodes were either vasovagal or neurologic. (Tr. 384). Dr. Faddis also noted that he suspected that Lavine was possibly a malingerer as he had "many complaints not associated with testable abnormality." (Tr. 379).

### Applicable Standards

To qualify for disability insurance benefits, a claimant must be "disabled." "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an

impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** *Schroeter v. Sullivan***, 977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala***, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing.  **See,** *Bowen v. Yuckert***, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater***, 55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**  Thus, the Court must determine not whether Plaintiff is, in fact, disabled, but whether ALJ Mills' findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See,** *Books v. Chater***, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater***, 55 F.3d 300, 306 (7th

**Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** In analyzing the ALJ's decision for "fatal gaps or contradictions," the Court "give[s] the opinion a commonsensical reading rather than nitpicking at it. *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)**.

## Analysis

The ALJ properly followed the five-step inquiry. He found that plaintiff has severe impairments, but that his impairments do not meet or exceed a listed impairment. He found that plaintiff has the residual functional capacity to perform a significant range of work at the light exertional level, and that there are a significant number of jobs available that he could do. (Tr. 25-26).

Plaintiff challenges the AJL's finding at step 3. He argues that his seizure or seizure-like condition is equal in severity to the listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.03 (2004). That listing is as follows:

> *Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day. [emphasis in original.]

The ALJ concluded that the seizure disorder was a "severe impairment." (Tr. 20).

However, he concluded that none of plaintiff's impairments, singly or in combination, meet or equal the requirements of any listing, including, specifically, Listing 11. 00.  He based this conclusion on the fact that there were no findings by either the state agency physicians or the treating physicians that would support the conclusion that plaintiff's condition equaled a listed impairment.

Plaintiff relies on ***Boiles v. Barnhart***, **395 F.3d 421 (7th Cir. 2005)** for his argument that the ALJ erred in not finding that his impairment equaled the listing for epilepsy, 11.03.  In Boiles, the plaintiff was diagnosed with pseudoseizures.  The evidence in that case was that pseudoseizure is distinguished from epilepsy, and is "another form of seizure altogether" which cannot be detected by EEG.  ***Boiles***, **395 F.3d at 424.**  The ALJ determined that Boiles' condition did not equal the listing because there was no abnormal EEG result, the frequency of seizures was in doubt because of lack of emergency room visits, and there was no evidence of residual symptoms during the day from nighttime seizures.  *Id*.  The Seventh Circuit held that the ALJ's determination was contrary to the evidence because the evidence showed that a normal EEG result was compatible with Boiles' condition, her doctor had testified that hospitalization for a person with pseudoseizures was futile, and there was evidence of impairment of daytime functioning.  ***Boiles***, **395 F.3d at 425.**

In contrast to ***Boiles***, there is a lack of medical evidence with regard to the exact nature of Mr. Lavine's seizure-like condition.  The evidence in ***Boiles*** was that pseudoseizure is a recognized medical diagnosis, and the plaintiff there was diagnosed with that condition.  Here, there is no definitive diagnosis that Mr. Lavine suffers from the condition of pseudoseizure, but Dr. Shah has certainly considered that diagnosis.  The evidence is that Dr. Shah questioned the

nature of his condition.  The last record from Dr. Shah is dated August 29, 2003.  On that date, the doctor noted "I am questioning my diagnosis myself as to whether these seizures are true seizures or seizure-like activity." (Tr. 305).  On that date, he again urged plaintiff to have his workup completed.  (Tr. 305).  Dr. Shah noted repeatedly the need to have video EEG monitoring performed.  (Tr. 306, 307).  The record does not reflect whether the video EEG was actually done.

In determining medical equivalence, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."  **Barnett v. Barnhart**, 381 F.3d 664, 669 (7th Cir. 2004).  Unfortunately, the ALJ in this case gave only a perfunctory analysis.  He referred to Listing 11.00, but not specifically to Listing 11.03.  He stated simply that the record contains no medical findings that would support a finding of medical equivalence.  He concluded that plaintiff has a seizure disorder which is severe, but there is no indication that he specifically analyzed whether plaintiff's seizure disorder equaled the listing for epilepsy at 11.03.  In particular, while he found that plaintiff's testimony was not fully credible, the ALJ did not make a finding as to the frequency of plaintiff's seizures.  This is a necessary inquiry in determining equivalence to Listing 11.03.  **See, Boiles**, 395 F.3d at 427.

In addition, it may be necessary for the ALJ to obtain additional medical records and/or further clarification from treating sources as to the diagnosis of Mr. Lavine's seizure disorder. **Barnett**, 381 F.3d at 669.  It is also possible that Mr. Lavine's condition equals some other listing, and that possibility must also be adequately considered by the ALJ.  **See, Boiles**, 395 F.3d at 427.

This case must be remanded for proper consideration of all of the evidence.  The Court

stresses that it is not suggesting that the ALJ's ultimate decision was incorrect.  This Court is not expressing any opinion concerning whether plaintiff's condition equals listed impairment.   is entitled to disability benefits.  The ALJ's conclusion was not necessarily wrong, but this Court is unable to adequately review whether the decision is supported by substantial evidence because of the gaps in the written decision.  The ALJ has failed to "build a bridge from the evidence to his conclusion."  *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

Remand of a social security case can be ordered pursuant to sentence four or sentence six of 42 U.S.C. § 405(g).  A sentence four remand depends upon a finding of error, and is itself a final, appealable order.  In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as rendered was correct.  A sentence six remand is not an appealable order.  **See,** *Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, 195 F.3d 975, 978 (7th Cir. 1999).

Here, a sentence four remand is appropriate.

### Recommendation

This Court recommends that the Commissioner's final decision be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this Report and Recommendation must be filed on or before **August 8, 2006.**

**Submitted:  July 20, 2006.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD
U. S. MAGISTRATE JUDGE**
